Dan Stormer, Esq. [S.B. # 101967]
Rebecca Brown, Esq. [S.B. #336638]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile:  (626) 577-7079
Emails: dstormer@hadellstormer.com
        rbrown@hadsellstormer.com

Olu K. Orange, Esq. (SBN 213653)
ORANGE LAW OFFICES
3435 Wilshire Blvd, # 2910
Los Angeles, CA 90010
Tel: (213) 736-9900
orangelawoffices@att.net

Attorneys for Plaintiff
JOLIE SAVAGE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOLIE SAVAGE,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF WHITTIER, PAUL SEGURA, MARK GOODMAN, JOHN DRAPER, MICHAEL PRZYBYL, JASON ZUHLKE, JEFFREY ROBERT, AND DOES 1 THROUGH 10.<br><br>Defendants. | Case No.: 21-cv-08067-VAP-PD<br><br>[Assigned to the Honorable Michelle Williams Court - Department 6A]<br><br>**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Hearing on Motions *in Limine*:<br>Date:        November 21, 2025<br>Time:        1:30 p.m.<br>Courtroom:  6A<br><br>Complaint filed:   October 10, 2021<br>Trial:        December 8, 2025 |

PLTFS' MEMORANDUM OF
CONTENTIONS OF FACT AND LAW

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff Jolie Savage ("Plaintiff") hereby submits their Memorandum of Contentions of Fact and Law pursuant to Local Rule 16-4.

**1.      Claims and Defenses (L.R. 16-4.1)**

**(a)      A summary statement of the claims Plaintiff has pleaded and plans to pursue.**

Plaintiff[1] has pled and currently plans to pursue the following claims at trial:

1.      **Claim 1:** Excessive Force (42 U.S.C. § 1983 4th and 14th Amendments) – against Defendants Segura, Goodman, and Draper

2.      **Claim 2:** Unlawful Arrest (42 U.S.C. § 1983 4th and 14th Amendments) – against Defendants Przybyl, Segura, Goodman, Draper, and Zuhlke

3.      **Claim 3:** First Amendment Retaliation (42 U.S.C. § 1983 1st and 14th Amendments) – against Defendants Przybyl, Segura, Goodman, Draper, and Zuhlke

4.      **Claim 4:** Conspiracy (42 U.S.C. §§ 1983, 1988) – against Defendants Przybyl, Segura, Goodman, Draper, and Zuhlke

**(b-c)   The elements required to establish Plaintiffs' claims and a brief description of the key evidence in support of each of the claims.**

**Claims 1-3**: For all of Plaintiff's Constitutional claims (Claims 1-3), she must prove each of the following elements by a preponderance of the evidence:

1.      the defendant acted under color of state law; and

2.      the act[s] of the defendant deprived the plaintiff Jolie Savage of particular rights under the United States Constitution as explained in later instructions; and

3.      The defendant's conduct was an actual cause of the claimed injury.

The Parties have stipulated that Defendants acted under color of state law.

(Ninth Cir. Manual of Model Civil Jury Instructions § 9.3 (2024 Edition)).

PLTFS' MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                -1-

For all of Plaintiff's Constitutional claims (Claims 1-3), she may establish liability against supervisory Defendants Przybyl and Segura. She must prove each of the following elements by a preponderance of the evidence:

1.   the supervisory defendant Michael Przybyl and/or Paul Segura acted under color of state law;

2.   the act[s] of the supervisory defendant Michael Przybyl and/or Paul Segura's subordinate[s] Mark Goodman, John Draper, and/or Jason Zuhlke deprived the plaintiff Jolie Savage of particular rights under the United States Constitution as explained in later instructions;

3.   the supervisory defendant Michael Przybyl and/or Paul Segura set in motion a series of acts by subordinate[s] Mark Goodman, John Draper, and/or Jason Zuhlke, or knowingly refused to terminate a series of acts by  subordinate[s] Mark Goodman, John Draper, and/or Jason Zuhlke, that the supervisor Michael Przybyl and/or Paul Segura knew or reasonably should have known would cause the subordinate[s] Mark Goodman, John Draper, and/or Jason Zuhlke to deprive the plaintiff Jolie Savage of these rights;

*and*

4.   The supervisory defendant Michael Przybyl and/or Paul Segura's conduct was so closely related to the deprivation of the plaintiff Jolie Savage's rights as to be the moving force that caused the ultimate injury.

The Parties have stipulated that Defendants acted under color of state law.

(Ninth Cir. Manual of Model Civil Jury Instructions § 9.4 (2025 Edition)).

**Claim 1**: Plaintiff has claims for Excessive Force (42 U.S.C. § 1983 4th and 14th Amendments) against Defendants Segura, Goodman, and Draper

**Elements Required to Establish Plaintiff's Claim No. 1:**

In order to prevail on her Excessive Force claims against Defendants Segura, Goodman, and Draper, Plaintiff must establish by a preponderance of the evidence that the officer[s] used excessive force.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether the officer[s] used excessive force in this case, the jury must consider all of the circumstances known to the officer[s] on the scene, including:

(1)　the nature of the crime or other circumstances known to the officer[s] at the time force was applied;

(2)　whether the plaintiff Jolie Savage posed an immediate threat to the safety of the officer[s] or to others;

(3)　whether the plaintiff Jolie Savage was actively resisting arrest or attempting to evade arrest by flight;

(4)　the amount of time the officer[s] had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(5)　the relationship between the need for the use of force and the amount of force used;

(6)　the extent of the plaintiff Jolie Savage's injury;

(7)　any effort made by the officer[s] to temper or to limit the amount of force;

(8)　the severity of the security problem at issue;

(9)　the availability of alternative methods to take the plaintiff Jolie Savage into custody;

PLTFS' MEMORANDUM OF
CONTENTIONS OF FACT AND LAW        -3-

(10)    the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; *i.e.,*which party created the dangerous situation, and which party is more innocent;

(11)    whether it was practical for the officer[s] to give warning of the imminent use of force, and whether such warning was given;

(12)    whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm; and

(13)    the number of police officers present.

"Probable cause" exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime. (Ninth Cir. Manual of Model Civil Jury Instructions § 9.25 (2025 Edition); *Washington v. Lambert*, 98 F.3d 1181, 1190 (9th Cir. 1996).)

Defendants Segura, Goodman, and Draper may be held liable for a violation of her Fourth Amendment right to be free from excessive force as integral participants. In order to find that Defendants Paul Segura, Mark Goodman, and/or John Draper are liable for the violation of her Fourth Amendment right to be free from excessive force as integral participants, the jury must find that the Defendant either:

(1) set in motion a series of acts resulting in Defendants John Draper and/or Mark Goodman's excessive force which he knew or reasonably should have known would cause Defendants John Draper and/or Mark Goodman to use excessive force; *or*

(2) knowingly refused to terminate a series of acts resulting in Defendants John Draper and/or Mark Goodman's excessive force, which he knew or reasonably should have known would cause Defendants John Draper and/or Mark Goodman to use excessive force; *or*

(3) knew about and acquiesced in Defendants John Draper and/or Mark

Goodman's excessive force as a part of a common plan with Defendants John Draper and/or Mark Goodman.

(Ninth Circuit Manual of Model Civil Jury Instructions § 9.2 (2025); *Peck v. Montoya*, 51 F.4th 877, 891 (9th Cir. 2022); *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691-92 (9th Cir. 2019); *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007)).

**Key Evidence in Support of Claim 1:**

On Tuesday, July 28, 2020, at approximately 6:00 p.m., Ms. Jolie Savage attended a peaceful protest against police brutality outside the Whittier Police Station and the blocks surrounding the police station. The protest was a counter-demonstration to an unpermitted "Police Appreciation Parade" being held at the same time. Prior to the event, Defendant Przybyl created an Operations Plan that detailed how the Whittier Police Department ("WPD") respond to the anti-police demonstrators. WPD officers closed down the street in front of the station to regular vehicular traffic to allow for the car caravan of pro-police demonstrators. Pedestrians were allowed to walk through the street, including between cars, freely. Ms. Savage felt physically safe in the middle of the street because the street was closed off to traffic. She would not have stood in the street had it not been blocked off to traffic.

Throughout the event, WPD officers fraternized with the pro-police demonstrators. Several pro-police motorists involved in the parade became aggressive with the protesters, physically pushing and yelling threats of violence at anti-police demonstrators. They also violate numerous vehicle code sections in the street. No pro-police demonstrators were arrested or cited during the event.

During the protest, Ms. Savage verbally expressed her criticism of law enforcement by yelling at law enforcement officers and pro-police demonstrators, including yelling obscenities. Ms. Savage did not engage in violence or threaten to engage in violence. As the pro-police car caravan proceeded, Ms. Savage stood in front

PLTFS' MEMORANDUM OF
CONTENTIONS OF FACT AND LAW

of two cars, both of which were traveling at a very low speed and came to a stop when Ms. Savage approached. Ms. Savage yelled at the cars, expressing her opinions on law enforcement. No Defendant or WPD officer instructed Ms. Savage to move away from the cars. No Defendant or WPD officer ever issued a dispersal order or otherwise declared an unlawful assembly.

Defendants WPD Officer Zuhlke observed the parade and counter-protest from the roof of the WPD station. He identified Ms. Savage over his radio to the WPD officers that were on the ground. Upon receiving this information, Defendant WPD Officer Przybyl ordered that Ms. Savage be arrested. Defendant WPD Officer Segura formed an arrest team of Defendants WPD Officers Draper and Goodman, and instructed them to arrest Ms. Savage. The underlying alleged offense used to justify the arrest of Ms. Savage was tantamount to "jaywalking" (Vehicle Code 21954(A)).

At approximately 7:15pm, Defendants Draper and Goodman intentionally approached Ms. Savage by surprise, forcefully grabbed her by her arms and dragged her a few feet. Defendants Draper and Goodman pushed Ms. Savage onto the ground. Once Ms. Savage was on the ground, Defendants Draper and Goodman continued to restrain her by holding onto her arms and wrists. Defendant Goodman moved his hand close to Ms. Savage's nose and mouth, causing her to fear that he was going to cover her nose and mouth. Fearing for her life, Ms. Savage attempted to bite Defendant Goodman. Defendant Goodman then smashed Ms. Savage's face into the ground by pushing his forearm into Ms. Savage's face.

Defendants Draper and Goodman turned Ms. Savage over onto her stomach while tightly gripping her arms. Defendant Draper used his bodyweight to push his knee into her back for approximately seven seconds, causing Ms. Savage to struggle to breathe. Ms. Savage screamed, "I can't breathe!" Defendant Draper released his knee off her back. Defendants Draper and Goodman then handcuffed Ms. Savage so tightly that it caused her arm to bleed.

Defendants Draper and Goodman walked Ms. Savage to the police station. Ms.

PLTFS' MEMORANDUM OF
CONTENTS OF FACT AND LAW                    -6-

Savage was booked into custody. She was released at approximately 4:30 a.m. the following morning.

As a result of the force used to arrest Ms. Savage, she was diagnosed with an elbow fracture and nerve damage. This has caused Ms. Savage to experience numbness, tingling, and pain in her left hand, which is her dominant hand, on a daily basis. Completing almost any task with her left hand, such as pouring a glass of water or driving, is painful. Her fine motor skills in her left hand have been substantially weakened, for example, her handwriting is now very poor.

Ms. Savage has attended numerous medical appointments and treatments, including examinations by orthopedic doctors, physical therapy, occupational therapy, acupuncture, and talk therapy. On December 16, 2021, Ms. Savage's doctor administered a cortisone shot into her elbow in an attempt to relieve Ms. Savage's symptoms. The shot did not provide Ms. Savage with relief. Because the shot did not alleviate Ms. Savage's symptoms, her doctor recommended that they operate on her elbow. On October 3, 2022, Ms. Savage underwent surgery on her left elbow which included medial epicondylectomy, tenoplasty, and ulnar nerve release. Unfortunately, Ms. Savage continues to experience the same symptoms in her left hand, including numbness, tingling, and pain on a daily basis, after the surgery. In December 2023, Ms. Savage's doctor informed her that the surgery was a failure and that the nerve damage and associated symptoms will not improve. Her doctor recommended that she receive acupuncture treatment aimed at maintaining the current status of her left elbow and hand, however the acupuncture would not improve the state of her elbow and hand or her symptoms. In the event that her symptoms worsen, her doctor will consider performing a second surgery on her, but it is unclear what the chances of success of the second surgery would be.

In addition to the bone fracture and nerve damage, Ms. Savage suffered multiple cuts and bruising on her lips, arms, wrists, and elbow. She continues to suffer back, neck, and shoulder pain as a result of Defendants' uses of force. Defendants' violent

PLTFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

-7-

arrest of Ms. Savage and its lasting physical impact on her have also traumatized Ms. Savage and caused her severe emotional distress.

**Claim 2**: Plaintiff has claims for Unlawful Arrest (42 U.S.C. § 1983 4th and 14th Amendments) against Defendants Przybyl, Segura, Goodman, Draper, and Zuhlke

**Elements Required to Establish Plaintiff's Claim No. 2:**

In order to prevail on her Unlawful Arrest claims against Defendants Przybyl, Segura, Goodman, Draper, and Zuhlke, Plaintiff must establish by a preponderance of the evidence that she was arrested without probable cause.

"Probable cause" exists when, under all of the circumstances known to the officers at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime. (Ninth Cir. Manual of Model Civil Jury Instructions § 9.23 (2024 Edition)).

Even if an individual is not formally placed under arrest, they may be placed under *de facto* arrest. In general, a seizure of a person by *de facto* arrest without a warrant is reasonable if the arresting officers Paul Segura, Mark Goodman, John Draper, Michael Przybyl, and/or Jason Zuhlke had probable cause to believe the plaintiff Jolie Savage has committed or was committing a crime.

To determine whether an arrest, rather than a detention, has occurred, consider all of the circumstances, including:

1.  The aggressiveness of the police methods used;

2.  How much the plaintiff Jolie Savage's liberty was restricted; and

3.  The justification for the use of such tactics.

In making this determination, focus on the perspective of the person seized, rather than the subjective beliefs of the law enforcement officers.

Especially intrusive means of effecting a stop are only reasonable in special circumstances, such as:

PLTFS' MEMORANDUM OF
CONTENTIONS OF FACT AND LAW
-8-

1. The suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight;

2. The police have information that the suspect is currently armed;

3. The stop closely follows a violent crime; and

4. The police have information that a crime that may involve violence is about to occur.

In order to prove the *de facto* arrest in this case was unreasonable, the plaintiff Jolie Savage must prove by a preponderance of the evidence that she was arrested without probable cause.

(Ninth Cir. Manual of Model Civil Jury Instructions § 9.23 (2024 Edition); *Washington v. Lambert*, 98 F.3d 1181, 1185, 1189 (9th Cir. 1996); *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1176 (9th Cir. 2013)).

Defendants Przybyl, Segura, Goodman, Draper, and Zuhlke may be held liable for a violation of Plaintiff Jolie Savage's Fourth Amendment right to be free from unlawful arrest as integral participants. In order to find that Defendants Michael Przybyl, Paul Segura, Mark Goodman, John Draper, and/or Jason Zuhlke are liable for the violation of Plaintiff Jolie Savage's Fourth Amendment right to be free from unlawful arrest as integral participants, the jury must find that the Defendant either:

(1) set in motion a series of acts resulting in Defendants John Draper and/or Mark Goodman's unlawful arrest of Plaintiff Jolie Savage which he knew or reasonably should have known would cause Defendants John Draper and/or Mark Goodman to unlawfully arrest Plaintiff Jolie Savage; *or*

(2) knowingly refused to terminate a series of acts resulting in Defendants John Draper and/or Mark Goodman's unlawful arrest of Plaintiff Jolie Savage, which he knew or reasonably should have known would cause Defendants John Draper and/or Mark Goodman to unlawfully arrest Plaintiff Jolie Savage; *or*

(3) knew about and acquiesced in Defendants John Draper and/or Mark

PLTFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

-9-

Goodman's unlawful arrest of Plaintiff Jolie Savage as a part of a common plan with Defendants John Draper and/or Mark Goodman.

(Ninth Circuit Manual of Model Civil Jury Instructions § 9.2 (2025); *Peck v. Montoya*, 51 F.4th 877, 891 (9th Cir. 2022); *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691-92 (9th Cir. 2019); *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007)).

**Key Evidence in Support of Claim 2:**

Plaintiff's key evidence in support of this claim is similar, if not identical, to the evidence that supports Plaintiff's First Claim for relief.

**Claim 3**: Plaintiff has claims for First Amendment Retaliation (42 U.S.C. § 1983 1st and 14th Amendments) against Defendants Przybyl, Segura, Goodman, Draper, and Zuhlke

**Elements Required to Establish Plaintiff's Claim No. 3:**

In order to prevail on her First Amendment claims against Defendants Przybyl, Segura, Goodman, Draper, and Zuhlke, Plaintiff must establish the following by a preponderance of the evidence:

(1) The plaintiff Jolie Savage was engaged in a constitutionally protected activity;

(2) The defendant Michael Przybyl, Paul Segura, Mark Goodman, John Draper, and/or Jason Zuhlke's actions against the plaintiff Jolie Savage would chill a person of ordinary firmness from continuing to engage in the protected activity; and

(3) The plaintiff Jolie Savage's protected activity was a substantial or motivating factor in the defendant's conduct.

If the plaintiff Jolie Savage establishes each of the foregoing elements, the burden shifts to the defendant to prove by a preponderance of the evidence that the defendant would have taken the action(s) in question, even in the absence of any motive to retaliate

PLTFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW                    -10-

against the plaintiff.

(Ninth Cir. Manual of Model Civil Jury Instructions § 9.11 (2025 Edition); *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990)).

Public demonstrations, including marches and other protest activities, are protected by the First Amendment, especially where the march or protest takes place in the streets.

Expressions of disapproval toward police, including the use of expletives, are protected by the First Amendment, and any action to punish or deter such speech is categorically prohibited by the First Amendment.

*Duran v. City of Douglas,* 904 F.2d 1372, 1374-78 (9th Cir. 1990); *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 830 (9th Cir. 2020); *United States v. Baugh*, 187 F.3d 1037, 1042 (9th Cir. 1999); *Seattle Affiliate of Oct. 22nd Coal. to Stop Police Brutality, Repression &Criminalization of a Generation v. City of Seattle,* 550 F.3d 788, 797 (9th Cir. 2008); *United States v. Poocha*, 259 F.3d 1077, 1081-82 (9th Cir. 2001); *Gulliford v. Pierce County,* 136 F.3d 1345, 1350 (9th Cir. 1998).

Arresting someone in retaliation for their exercise of free speech rights would chill a person of ordinary firmness from continuing to engage in the protected activity.

An arrest made with probable cause may be retaliation in violation of the First Amendment if Plaintiff Jolie Savage presents objective evidence that she was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.

*Lacey v. Maricopa County,* 693 F.3d 896, 917 (9th Cir. 2012)*; Beck v. City of Upland,* 527 F.3d 853, 870 (9th Cir. 2008); *Nieves v. Bartlett*, 139 U.S. 1715, 1727 (2019).

Defendants Przybyl, Segura, Goodman, Draper, and Zuhlke may be held liable for a violation of Plaintiff Jolie Savage's First Amendment rights as integral

participants. In order to find that Defendants Michael Przybyl, Paul Segura, Mark Goodman, John Draper, and/or Jason Zuhlke are liable for the violation of Plaintiff Jolie Savage's First Amendment rights as integral participants, the jury must find that the Defendant either:

(1) set in motion a series of acts resulting in Defendants John Draper and/or Mark Goodman's violation of Plaintiff Jolie Savage's First Amendment rights which he knew or reasonably should have known would cause Defendants John Draper and/or Mark Goodman to violate Plaintiff Jolie Savage's First Amendment rights; *or*

(2) knowingly refused to terminate a series of acts resulting in Defendants John Draper and/or Mark Goodman's violation of Plaintiff Jolie Savage's First Amendment rights, which he knew or reasonably should have known would cause Defendants John Draper and/or Mark Goodman to violate Plaintiff Jolie Savage's First Amendment rights; *or*

(3) knew about and acquiesced in Defendants John Draper and/or Mark Goodman's violation of Plaintiff Jolie Savage's First Amendment rights as a part of a common plan with Defendants John Draper and/or Mark Goodman.

Ninth Circuit Manual of Model Civil Jury Instructions § 9.2 (2025); *Peck v. Montoya*, 51 F.4th 877, 891 (9th Cir. 2022); *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691-92 (9th Cir. 2019); *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007).

**Key Evidence in Support of Claim 3:**

Plaintiff's key evidence in support of this claim is similar, if not identical, to the evidence that supports Plaintiff's First Claim for relief.

**Claim 4**: Plaintiff has claims for Conspiracy (42 U.S.C. §§ 1983, 1988) against Defendants Przybyl, Segura, Goodman, Draper, and Zuhlke

**Elements Required to Establish Plaintiff's Claim No. 4:**

In order to prevail on her Conspiracy claims against Defendants Przybyl, Segura,

PLTFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

-12-

Goodman, Draper, and Zuhlke, Plaintiff must establish by a preponderance of the evidence that two or more Defendants, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming Plaintiff Jolie Savage, and did harm Plaintiff Jolie Savage.

To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy. A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions. (*Vieux v. East Bay Reg'l Park Dist.*, 906 F.2d 1330, 1343 (9th Cir.1990); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir.1989) (en banc); *Gilbrook v. City of Westminister*, 177 F.3d 839, 856–57 (9th Cir. 1999)).

**Key Evidence in Support of Claim 4:**

Plaintiff's key evidence in support of this claim is similar, if not identical, to the evidence that supports Plaintiff's First Claim for relief.

**(d-f)   Affirmative defenses, elements, and evidence**

**Affirmative Defense 1:** Qualified Immunity

**Elements Required to Establish Defendants' Affirmative Defense No. 1:**

(1) whether the facts the plaintiff alleges make out a violation of a constitutional right; and

(2) whether that right was clearly established at the time the defendant acted. (*Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc)).

**Key Evidence in Opposition:**

The Court has already determined that the above listed Defendants are not entitled to qualified immunity on the above listed claims in its ruling on Defendants' Motion for Summary Judgment. Dkt. 97 at 37:5-41:14, 45:19-46:11. The Ninth Circuit upheld this Court's denial of qualified immunity (with the exception of Officer Robert). Dkt. 111. Defendants cannot now attempt to appeal this Court's and the Ninth Circuit's ruling. Furthermore, this is a legal defense which must be raised by way of motion and

PLTFS' MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                    -13-

ruled on by the Court, as it has been. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**2.     Bifurcation of Issues (L.R. 16-4.3)**

Plaintiff does not request bifurcation of issues. Plaintiff understands that Defendants intend to move to bifurcate the case into three phases: (1) liability and entitlement to punitive damages, (2) compensatory damages (if necessary), and (3) amount of punitive damages (if necessary). Plaintiff does not oppose deciding the amount of punitive damages in a second phase but believes that all other issues would be most efficiently decided in the first phase. Plaintiff intends to oppose Defendants' forthcoming motion for trifurcation and fully brief the issue.

**3.     Jury Trial (L.R. 16-4.4)**

Plaintiff's claims are triable to a jury and Plaintiffs have made a timely demand for a trial by jury.

**4.     Attorneys' Fees (L.R. 16-4.5)**

Should Plaintiff prevail at trial, she will request and be entitled to reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

**5.     Abandonment of Issues (L.R. 16-4.6)**

Plaintiff abandons her Conspiracy claim against Defendant Jeffrey Robert. Defendants have abandoned all affirmative defenses with the exception of qualified immunity.

/ / /

/ / /

PLTFS' MEMORANDUM OF
CONTENTIONS OF FACT AND LAW                    -14-

Dated: October 24, 2025            Respectfully Submitted,

                                   HADSELL STORMER RENICK & DAI LLP


                                   By:    /s/  Rebecca Brown
                                          Dan Stormer
                                          Rebecca Brown
                                   Attorneys for Plaintiff