Nathan A. Oyster (SBN 225307)
E-mail: noyster@bwslaw.com
Caylin W. Jones (SBN 327829)
E-mail: cjones@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, CA 90071-2942
Tel: 213.236.0600 Fax: 213.236.2700

Attorneys for Defendants
PAUL SEGURA, MARK GOODMAN, JOHN DRAPER,
MICHAEL PRZYBYL, and JASON ZUHLKE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOLIE SAVAGE,<br><br>            Plaintiff,<br><br>       v.<br><br>CITY OF WHITTIER, JEFF PIPER, PAUL SEGURA, MARK GOODMAN, JOHN DRAPER, MICHAEL PRZYBYL, JASON ZUHLKE, JEFFREY ROBERT, AND DOES 1 THROUGH 10,<br><br>            Defendants. | Case No.  2:21-cv-08067-MWC-PD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 3 TO EXCLUDE ALL EVIDENCE AND TESTIMONY REGARDING PLAINTIFF'S SURGERY**<br><br>*Filed concurrently with Declaration of Nathan A. Oyster, and  [Proposed] Order*<br><br>Hearing on MIL(s) and Final Pretrial Conference:<br>Date:        11/21/2025<br>Time:        1:30 p.m.<br>Courtroom:   6A<br><br>Trial Date:  12/08/2025<br>Time:        8:30 a.m.<br>Courtroom:   6A<br><br>Judge:  Hon. Michelle Williams Court |

TO THE HONORABLE COURT, AND TO PLAINTIFF AND HER

ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 21, 2025 at 1:30 p.m. in

Courtroom 6A of the above-entitled Court, located at 350 W. 1st Street, 6th Floor,

Los Angeles, California 90012, Defendants PAUL SEGURA, MARK GOODMAN,

JOHN DRAPER, MICHAEL PRZYBYL, and JASON ZUHLKE (collectively, "Defendants") will and hereby do move this Court for an Order to exclude all evidence or argument regarding the cause of Plaintiff's alleged injuries and any evidence, testimony, or argument regarding Olaintiff's surgery.  This motion is made following the Local Rule 7-3 conference of counsel on October 17, 2025.

This motion is made pursuant to Federal Rules of Evidence 401, 402, and 403, and is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the supporting Declaration of Nathan A. Oyster and exhibits attached thereto, and any other oral or documentary evidence that may be presented to the Court in support of this motion at the time of the hearing.

Dated:  October 24, 2025                    BURKE, WILLIAMS & SORENSEN, LLP

By:        /s/ Nathan A. Oyster
           Nathan A. Oyster
           Caylin W. Jones
           Attorneys for Defendants
           PAUL SEGURA, MARK
           GOODMAN, JOHN DRAPER,
           MICHAEL PRZYBYL, and JASON
           ZUHLKE

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4933-4651-1989 v3                          2                    Case No. 2:21-cv-08067-MWC-PD
                                                      DEFENDANTS' NOTICE OF MOTION AND
                                                            MOTION IN LIMINE NO. 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case arises from the July 28, 2020 arrest of Plaintiff JOLIE SAVAGE by officers of the Whittier Police Department during an event that featured competing groups of people – a pro-police vehicle caravan and anti-police protestors – exercising their First Amendment rights that occurred at the City of Whittier Police Station. Plaintiff contends Defendants arrested her without a lawful basis, used unreasonable force, and violated her First, Fourth, and Fourteenth Amendment rights.

Savage was arrested shortly after blocking vehicular traffic. During the arrest, Officers Goodman and Segura approached Savage while she stood behind the skirmish line. Officer Goodman used one hand to grab the upper part of one of Savage's arms. As the officers escorted Savage to an area where she would be handcuffed, Savage fell to the ground on her back as Officers Goodman and Draper attempted to move Savage to a point of safety on the other side of the skirmish line. Officers Goodman and Draper continued to hold Savage's arms and wrists to restrain her. While on the ground, Savage attempted to bite Officer Goodman's right forearm as he tried to gain control of her arms.

After the attempted bite, Officer Goodman held Savage's face against the ground with his right forearm and eventually turned her onto her stomach. Officer Draper then placed his knee on Savage's back for three to four seconds for the purpose of controlling Savage's body. Savage said, "I can't breathe," and Officer Draper immediately removed his knee. Officers Goodman and Draper then pulled Savage's arms behind her back, handcuffed her, and escorted her to the Whittier Police Department station. Savage alleges that she was injured during the arrest and that she underwent surgery.

/ / /

/ / /

Burke, Williams & Sorensen, LLP  
Attorneys at Law  
Los Angeles

4933-4651-1989 v3

1

Case No. 2:21-cv-08067-MWC-PD  
DEFENDANTS' NOTICE OF MOTION AND  
MOTION IN LIMINE NO. 3

## II.    LEGAL STANDARD

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). "[M]otions in limine must identify the evidence at issue and state with specificity why such evidence is inadmissible." *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. 08-CV-08525-PSG (PJWx), 2010 WL 2035800, at 1 (C.D. Cal. May 19, 2010). The following legal principles govern the evidence Defendants seek to exclude by this motion.

Federal Rules of Evidence, Rule 402 provides that evidence which is not relevant is not admissible. FED. R. EVID. 402; *United States v. Schaff*, 948 F.2d 501 (9th Cir. 1991). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. See FED. R. EVID. 401.

Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Further, "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Moreover, a party wishing to introduce expert testimony must show that the proposed testimony is admissible under Rule 702 of the Federal Rules of Evidence. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4933-4651-1989 v3

2

Case No. 2:21-cv-08067-MWC-PD
DEFENDANTS' NOTICE OF MOTION AND
MOTION IN LIMINE NO. 3

specialized knowledge **will help the trier of fact to understand the evidence or to determine a fact in issue**; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702 (emphasis added).

Furthermore, the trial court is accorded wide discretion when acting as gatekeepers for the admissibility of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151-52 (1999). See also, *Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc.*, No. 2:16-CV-0084-FMO-AJW, 2017 WL 2929377, at 1 (C.D. Cal. May 14, 2017). Relevant expert testimony "logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir.1995) (Daubert II). An expert's testimony must assist the trier of fact and relate to, or "fit," the underlying facts of the case. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) (Daubert I). The proponent of the evidence must prove its admissibility by a preponderance of the evidence. Daubert I, 509 U.S. at 592 n.10.

## III.    UNDERLINE ARGUMENT

Defendants respectfully request an Order precluding Plaintiff from offering any evidence or testimony at trial regarding her surgery. Plaintiff seeks to accomplish this in two ways: Through lay witness testimony and through testimony of non-retained expert and treating physician Dr. Mizrayan. Both are improper for the following reasons: (1) lack of expert witness foundation connecting Plaintiff's surgery; (2) lay witnesses, including Plaintiff Savage, may not provide testimony or opinions "based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

/ / /

/ / /

/ / /

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4933-4651-1989 v3

3

Case No. 2:21-cv-08067-MWC-PD
DEFENDANTS' NOTICE OF MOTION AND
MOTION IN LIMINE NO. 3

## A.    Lack of Expert Witness Foundation Connecting Plaintiff's Injuries and Surgery to the Incident

Plaintiff intends to introduce evidence through Dr. Raffi Mizrayan regarding her surgery. However, Dr. Mizrayan is merely a treating physician – not a retained expert, and Plaintiff has not offered any evidence to form the required foundation for opinion, testimony, and evidence regarding Plaintiff's elbow surgery and cause of Plaintiff's injuries as required by Fed. R. Evid. 702; Oyster Decl., Exhibit A, ¶ 3. Nowhere in Dr. Mizrayan's deposition did Dr. Mizrayan mention that Plaintiff's surgery was a result of Savage falling at the scene of the incident on July 28, 2020. Id. Indeed, Dr. Mizrayan testified in deposition that Plaintiff's alleged elbow condition is a "repetitive overuse," and "repetitive use" injury. Id. at pp. 27 and 50. As further indicated in Dr. Mizrayan's deposition, Dr. Mizrayan formed no opinion regarding the cause of Plaintiff Savage's injuries that necessitated the surgery – Dr. Mizrayan only testified as to **type** of injury Plaintiff Savage had and expressly stated under oath "…**I'm not involved with causation; I'm not an expert witness**…":

- "Medical epicondylitis is commonly referred to as golfer's elbow." See Oyster Decl., Exhibit A, Mizrayan Depo., 26:22-27:1.

- "Most common **type** [of medical epicondylitis] is repetitive overuse." See Oyster Decl., Exhibit A, Mizrayan Depo., 27:6-14.

- "Whatever's on the note is what she said. So if she said she got injured by the police, that's – that's what I put down. I don't fact check. I don't ask for proof. If that's what the patient tells me, that's what I put down." See Oyster Decl., Exhibit A, Mizrayan Depo., 28:13-22.

- "So I'm not involved with causation; I'm not an expert witness. I – I just treat the pathology. I don't delve into the why it happened." See Oyster Decl., Exhibit A, Mizrayan Depo., 29:13-21.

- "I don't think she – based on what I've seen on my – on the stuff you presented, I – I don't think she had a fracture," "My x-ray readings said

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4933-4651-1989 v3

4

Case No. 2:21-cv-08067-MWC-PD
DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 3

there was a fleck of bone and I – if I thought that was a fracture, I would have used the word fracture." See Oyster Decl., Exhibit A, Mizrayan Depo., 47:14-48:11.

- Responded, "Correct," in response to a question asking, "And just to circle back, earlier you said you had no opinion as to the causation of the left elbow injury, correct?" See Oyster Decl., Exhibit A, Mizrayan Depo., 48:23-49:1.

- "It's usually a repetitive overuse of grabbing, pushing, pulling, grasping motions with the hand. So it's a repetitive use kind of situation." See Oyster Decl., Exhibit A, Mizrayan Depo., 50:19-25.

Moreover, Dr. Mizrayan is not a retained expert and has not provided any reports. "[A] treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment." *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) ; see also  *Clemons v. United States*, No. 24-510, 2025 WL 1024108, at *1 (9th Cir. Apr. 7, 2025) (holding, "The district court did not abuse its discretion by excluding Clemons's treating physician's testimony. The district court excluded Dr. Snyder's testimony under Rule 37 because Clemons did not identify Dr. Snyder as an expert witness, and Dr. Snyder did not submit an expert report."). "The Ninth Circuit concluded that a treating physician is exempt from the written report requirement only to the extent that the physician's opinions were formed during the course of treatment." *Doe 1 v. Manhattan Beach Unified Sch. Dist.*, No. CV1906962DDPRAOX, 2020 WL 7931596, at *3 (C.D. Cal. Dec. 22, 2020); see also *Cantu v. United States*, No. CV1400219MMMJCGX, 2015 WL 12743881, at *5 (C.D. Cal. Apr. 6, 2015) (reasoning, "the critical distinction between retained and non-retained experts is the nature of the testimony the expert will provide, and whether it is based only on percipient knowledge or on information reviewed in anticipation for trial"); *Mann v. Cnty. of San Diego*, No. 11-CV-708-GPC (BGS),

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4933-4651-1989 v3

5

Case No. 2:21-cv-08067-MWC-PD
DEFENDANTS' NOTICE OF MOTION AND
MOTION IN LIMINE NO. 3

2014 WL 12729300, at *2 (S.D. Cal. Feb. 12, 2014) ("[A] treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent his or her opinions were formed during the course of treatment"); *Viveros v. Donahoe*, No. CV 10-08593 MMM (EX), 2012 WL 12883966, at *2 (C.D. Cal. May 22, 2012) (emphasis added) (citing *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 919 (9th Cir. 2011) ("[Treating physicians] are not specially hired to provide expert testimony; rather, they are hired to treat the patient and **may testify to and opine on what they saw and did** without the necessity of the proponent of the testimony furnishing a written expert report.")

Accordingly, Dr. Mizrayan cannot opine on or provide testimony that Plaintiff's surgery was a result of the incident.

**B.    Lay Witnesses, Including Plaintiff Savage, May Not Provide Testimony or Opinion Regarding Plaintiff's Injuries and Surgery, Which Are Based on Scientific, Technical, or Other Specialized Knowledge**

It is well established that lay witnesses, including Plaintiff Savage, may not offer testimony on anything that requires "scientific, technical, or other specialized knowledge within the scope of Rule 702." "For this reason, courts do not allow lay witnesses to testify as to the cause, effect, diagnosis or prognosis of their injuries, because such opinions require testimony from a medical expert." *Gray v. Clark*, 654 F. Supp. 3d 1062, 1071 (E.D. Cal. 2023); see also *Howell v. Burns*, No. 119CV00715NONESABPC, 2021 WL 4975187, at *7 (E.D. Cal. Oct. 26, 2021) (citing Fed. R. Evid. 701, 702) (holding, "While Plaintiff may offer testimony as to what he experiences [sic] and felt…he cannot testify regarding a diagnosis, prognosis, opinions, inferences, or causation of his alleged injuries as he has no medical expertise, training, or education.") Thus, Defendants request an order precluding Plaintiff from offering any evidence or argument regarding Plaintiff Savage's surgery or the cause of her alleged injuries.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4933-4651-1989 v3

6

Case No. 2:21-cv-08067-MWC-PD
DEFENDANTS' NOTICE OF MOTION AND
MOTION IN LIMINE NO. 3

## IV.   CONCLUSION

For the foregoing reasons, Defendants request an order precluding Plaintiff from offering any evidence regarding Plaintiff's surgery or the cause of her alleged injuries.

Dated:  October 24, 2025                    BURKE, WILLIAMS & SORENSEN, LLP


By:      /s/ Nathan A. Oyster
         Nathan A. Oyster
         Caylin W. Jones
         Attorneys for Defendants
         PAUL SEGURA, MARK
         GOODMAN, JOHN DRAPER,
         MICHAEL PRZYBYL, and JASON
         ZUHLKE

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4933-4651-1989 v3

7

Case No. 2:21-cv-08067-MWC-PD
DEFENDANTS' NOTICE OF MOTION AND
MOTION IN LIMINE NO. 3

**DECLARATION OF NATHAN A. OYSTER**

I, Nathan A. Oyster, declare as follows:

1.     I am a partner with Burke, Williams & Sorensen, LLP, attorneys of record for PAUL SEGURA, MARK GOODMAN, JOHN DRAPER, MICHAEL PRZYBYL, and JASON ZUHLKE.  I have personal knowledge of the facts set forth herein.  If called as a witness, I could and would competently testify to the matters stated herein.  I make this declaration in support of Defendants' Notice of Motion and Motion in Limine No. 3 to exclude all opinions on the cause of plaintiff's injuries and any evidence of plaintiff's surgery.

2.     Pursuant to Local Rules 7-3 and 16-2, I met and conferred with Plaintiff's counsel, Rebecca Brown, on October 9, 2025 and October 17, 2025. We were unable to resolve the issues without the need for this Motion.

3.     Attached hereto as **Exhibit A** is a true and correct copy of excerpts from Dr. Mizrayan's deposition transcript.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 24th day of October, 2025, at Los Angeles, California.


_/s/ Nathan A. Oyster_
Nathan A. Oyster

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4933-4651-1989 v3

8

Case No. 2:21-cv-08067-MWC-PD
DEFENDANTS' NOTICE OF MOTION AND
MOTION IN LIMINE NO. 3

# EXHIBIT A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


| | |
|---|---|
| JOLIE SAVAGE,                                    ) | |
|                                                  ) | |
|                    Plaintiff,    ) | |
|                                                  ) | |
|         vs.                      ) | CASE NO. |
|                                                  ) | 21-cv-08067-VAP-PD |
|                                                  ) | |
| PAUL SEGURA, MARK                ) | |
| GOODMAN, JOHN DRAPER,            ) | |
| MICHAEL PRZYBYL, JASON           ) | |
| ZUHLKE, JEFFREY ROBERT, AND      ) | |
| DOES 1 THROUGH 10,               ) | |
|                                                  ) | |
|                    Defendants.    ) | |
| _____) | |


DEPOSITION OF RAFFY MIRZAYAN, M.D.


TAKEN ON


THURSDAY, MARCH 2, 2023


KIMBERLY E. LEPINS, CSR NO. 9592, RPR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOLIE SAVAGE,                          )
                                       )
                 Plaintiff,            )
                                       )
         vs.                           )   CASE NO.
                                       )   21-cv-08067-VAP-PD
                                       )
PAUL SEGURA, MARK                      )
GOODMAN, JOHN DRAPER,                  )
MICHAEL PRZYBYL, JASON                 )
ZUHLKE, JEFFREY ROBERT, AND            )
DOES 1 THROUGH 10,                     )
                                       )
                 Defendants.           )
_____)

Zoom deposition of RAFFY MIRZAYAN, M.D., taken by the

Defendants, City of Whittier, Paul Segura, Mark Goodman,

John Draper, Michael Przybyl, Jason Zuhlke and Jeffrey

Robert, via Videoconference, in the City of Banning,

County of Riverside, State of California, commencing at

10:08n a.m., Thursday, MARCH 2, 2023, before KIMBERLY E.

LEPINS, CSR No. 9592, RPR, for the State of California,

pursuant to Notice.

---o0o---

2

A P P E A R A N C E S:


FOR THE PLAINTIFF:

       HADSELL STORMER RENICK & DAI LLP
       128 N. FAIR OAKS AVE.
       PASADENA, CA 91103
       (626) 585-9600
       BY:  REBECCA BROWN, ATTORNEY AT LAW
         RBROWN@HADSELLSTORMER.COM



FOR THE DEFENDANTS:

       BURKE, WILLIAMS & SORENSEN, LLP
       444 SOUTH FLOWER STREET
       SUITE 2400
       LOS ANGELES, CALIFORNIA 90071-2953
       (213) 236-0600
       BY:  JOHN R. HORSTMANN, ATTORNEY AT LAW
            JHORSTMANN@BWSLAW.COM


ALSO PRESENT:

       VALERIE RODRIGUEZ, CSR NO. 8520

3

Right below that on Exhibit 2 where it says X-ray, and dated December 16th, 2021, then it says (as read):

"Small fleck of bone medially."

Did you review any X-rays on December 16th, 2021?

A.   I mean, I don't recall off the top of my head but if the date of the appointment was on 12-16-21 and the X-ray is dated 12-16-21, I would have definitely reviewed the X-ray.

Q.   All right.  Well, did you order that X-ray?

A.   Either myself or my nurse would have ordered it, or my medical assistant who was working with me that day would have ordered it.

Q.   All right.

And then below where it says X-rays, it says "A slash P."  What does A slash P mean?

A.   Assessment slash plan.

Q.   Okay.

A.   Meaning what is -- what I think is going on and what I'm going to do for the patient.

Q.   And then right there it says (as read):

"Left elbow medial epicondylitis."

What is that?

A.   Medial epicondylitis is commonly referred to as

26

golfer's elbow.

Q.   Okay.

A.   So tennis elbow is on the outer part of the elbow and golfer's elbow is on the inner part of the elbow.

Q.   And in laymen's terms, what is medial epicondylitis?   How does that manifest itself as an injury?

A.   Most common type is repetitive overuse.  A lot of people who have clerical jobs who type a lot get it.

The medial side, the golfer's elbow, is not as common as the lateral side; that's way more common.  But it's repetitive grabbing, pushing, pulling, is typically how it manifests itself.

Q.   And then right below that, diagnosis, it says (as read):

"Inject cortisone number 1."

Do you see that?

A.   Yes.

Q.   All right.  And that was the procedure that you -- or strike that.

You gave Ms. Salvage a cortisone injection on December 16th, 2021, correct?

A.   Yes.  And number 1 implies that's the first cortisone injection that I'm giving her because we don't

27

want to give too much, so I keep track of the number of injections that I give someone.

So that means that was the first injection that I've given her to that site.

Q.   And what was the basis for doing a cortisone injection on that day?

A.   Because she was in pain --

Q.   Okay.  And --

A.   -- and she had been having pain since July of '21.  So usually if after six weeks of nonoperative treatment they're still having pain, that's -- that's the go-to treatment option.

Q.   Okay.  All right.

Now, circling back to any conversations that you had with Ms. Savage, did she relay to you how the incident on July 28th, 2020 occurred?

A.   Whatever's on the note is what she said.  So if she said she got injured by the police, that's -- that's what I put down.

I don't fact check.  I don't ask for proof.  If that's what the patient tells me, that's what I put down.

Q.   And what's in the note currently is -- do you recall anything in addition to what's in the note that she may have described how the incident occurred?

28

A.   No.

Q.   So on December 16, 2021, you gave Ms. Savage a cortisone injection.  Did you at that time recommend any further treatment for her?

A.   As you can see on my note, it says stretching exercises.  So I instruct patients how to do stretching exercises, to stretch out those tendons that are attached to the medial epicondyle.

I also give them a -- we call it a tennis elbow strap, but it can be used for tennis elbow and golfer's elbow.  And we encourage patients to wear that pretty much throughout the day.

Q.   As far as the causation of the left elbow medial epicondylitis, are you -- strike that.

Do you have any opinion as to what the causation of Ms. Savage's epicondylitis was when you looked at her on the 26th -- or December 16th, 2021?

A.   So I'm not involved with causation; I'm not an expert witness.  I -- I just treat the pathology.  I don't delve into the why it happened.  I treat the problem, so...

Q.   Okay.  All right.  I'm going to stop sharing Exhibit 2.

I'm going to bring up Exhibit 3, which is another note from June 8th, 2022.  So I'm going to bring

29

Q.   Okay.  All right.  Prior to today's deposition, have you had any conversations with plaintiff's counsel about any opinions that -- regarding medical treatment that you provided to Ms. Savage that you may testify to at trial?

A.   No.

Q.   All right.  Is today the first time that you've seen Exhibit 5?

A.   Yes.

Q.   Okay.  So do you see the highlighted portion on page 3 of Exhibit 5 where it starts with the Roman numeral I?

A.   Yes.

Q.   Okay.  Do you have any opinions about any injuries that Ms. Savage may have sustained relating to her back and her neck?

A.   Again, I did not assess her neck and based on the records that you've provided today, I -- there was nothing in my documentation about her neck, so I can't comment on that.

Item number 2, that she suffered a fracture of her left arm, I -- I don't think she -- based on what I've seen on my -- on the stuff you presented, I -- I don't think she had a fracture.

And then I -- yeah, I did perform surgery on

47

her elbow, as we saw earlier with the report of the operation.

Q. Okay. And I just want to clarify because we all agree that there was a left elbow injury; is that fair to say?

A. Based on what she told me, yes.

Q. And why do you say it wasn't a fracture? Why would you say it's not fractured?

A. My X-ray readings said there was a fleck of bone and I -- if I thought that was a fracture, I would have used the word fracture.

Q. Okay. All right.

As far as any recommended future treatment for the left elbow injury, do you have any opinions as to any future treatment that Ms. Savage would need?

A. Again, I don't recall this specific case and we haven't seen any of my notes from after surgery, so I don't know how she's doing. But most patients get pain relief completely after this procedure and it's good forever; it shouldn't -- it shouldn't be a problem.

Do some patients recur; do they have problems come back? Yes, but that's rare; but it can happen.

Q. All right. And just to circle back, earlier you said you had no opinion as to the causation of the left elbow injury, correct?

48

A.    Correct.

Q.    All right.  I'm going to stop sharing Exhibit 5.

Doctor, prior to today's deposition, have you had any conversations with Ms. Savage that you recall about how the incident occurred?

A.    Just on the first appointment, on 12-16-21, when she stated to me how she was injured and I documented it in her medical record.  That's the only time.  I don't recall any other time of having specifically discussed that.

Q.    Since October 3rd, 2022, do you recall any subsequent visits where you personally saw Ms. Savage?

A.    I don't.  I do not.

Q.    All right.

And as far as all the medical treatment that you've provided to Ms. Savage regarding to her elbow pain, based on what you testified to here today, have you testified about everything that you recall related to that surgery?

A.    Yes.

Q.    And have you testified about everything that you recall as far as any recommended future treatment that Ms. Savage may need for her left elbow?

A.    I don't recall discussing that at any point so,

49

but yeah -- can you repeat the question?  I just want --

Q.   Sure.

A.   -- to make sure I answered correctly.

Q.   Sure.  Let me rephrase it.

Going back, you said you don't have an opinion as to whether Ms. Savage would need any recommended future treatment; is that correct?

A.   That's correct.

Q.   All right.  That's it.

MR. HORSTMANN:  Those are all my questions. Thank you, Doctor.


**EXAMINATION**

BY MS. BROWN:

Q.   I have a couple of questions for you, Doctor. Would you like to take a brief break or are you ready to proceed?

A.   I'm ready to go.

Q.   Okay.  Let me know any time you need a break. Shouldn't be too long, hopefully.

All right.  Generally speaking, what causes medial epicondylitis in the elbow?

A.   It's usually repetitive overuse of grabbing, pushing, pulling, grasping motions with the hand.  So it's a repetitive use kind of situation.

50

--oOo--

I, the undersigned, declare under penalty of perjury that the foregoing is true and correct.

Executed on ___March 13_____, 2023, at

__Baldwin Park_____, California.


_____
RAFFY MIRZAYAN, M.D.

59

REPORTER'S CERTIFICATE

I, KIMBERLY E. LEPINS, Certified Shorthand Reporter for the State of California, hereby certify:

THAT the witness in the foregoing deposition was duly sworn by me to testify to the truth, the whole truth, and nothing but the truth;

THAT said deposition was written by me in stenotype and was thereafter reduced to printed matter under my direction and supervision;

THAT the foregoing transcript is a true record of the testimony given by the witness and of all objections made at the time of the examination, to the best of my ability.

I FURTHER CERTIFY that I am in no way interested in the outcome of said action.

IN WITNESS WHEREOF, I have hereunto subscribed my hand this 7th day of March, 2023.

_Kimberly Lepins_
_____
KIMBERLY E. LEPINS
Certified Shorthand Reporter
Certificate No. 9592; RPR

60

REPORTER'S COPY CERTIFICATE

I, KIMBERLY E. LEPINS, Certified Shorthand Reporter for the State of California, hereby certify:

THAT the foregoing is a true and correct copy of the original record of the testimony given by the witness and of all objections made at the time of the examination, to the best of my ability.

I FURTHER CERTIFY that I am in no way interested in the outcome of said action.

IN WITNESS WHEREOF, I have hereunto subscribed my hand this 7th day of March, 2023.

_____*Kimberly Lepins*_____
KIMBERLY E LEPINS
Certified Shorthand Reporter
Certificate No. 9592; RPR

61